**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| Intellectual Ventures II LLC, | ) <br> ) |
| *Plaintiff*, | )    6:16-cv-00081-JRG <br> ) |
| v. | ) <br> )    ECF Case |
| Kemper Corporation; Trinity Universal Insurance Company d/b/a Kemper Preferred; Unitrin County Mutual Insurance Company d/b/a Kemper Direct and Kemper Specialty; Charter Indemnity Company d/b/a Kemper Specialty, | ) <br> ) <br> )    **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) |
| *Defendants*. | ) <br> ) |

# DEFENDANTS' MOTION TO STAY

**I.     INTRODUCTION**

At this very early stage in litigation, the Court should stay this case based on two grounds.

Regarding the '177 patent, there are two *inter partes* review ("IPR") petitions that seek to invalidate almost all of the claims that IV could assert in this lawsuit. In particular, 90% of the claims of the '177 patent are undergoing *inter partes* review where the PTAB will reach a final written decision by February 2017. This Court recently granted a stay to Great West and BITCO based upon these very IPRs. *Intellectual Ventures II LLC v. BITCO General Insurance Corp.*, No. 6:15-cv-59, Dkt. No. 145 (E.D. Tex. May 12, 2016). Collectively, the '177 IPRs are very likely to simplify, if not altogether eliminate, IV's allegations on the '177 patent. The Court should stay this case until the pending '177 patent IPRs conclude.

Regarding the '442 patent, the Court should stay the case under the customer suit exception in addition to an IPR petition that has been filed on that patent. Shortly after filing the complaint in this case, accusing the Kemper Defendants of infringing the '442 patent by using products manufactured by EMC, IV sued EMC itself in the District of Massachusetts on the very same patent. Pursuant to longstanding Federal Circuit precedent, this manufacturer suit should take precedence over a first-filed customer suit. It is EMC—not the Kemper Defendants—who is the true defendant to IV's infringement allegations based on the '442 patent claims and who has a greater interest in defending its products against charges of infringement. By staying the '442 patent claims in this case, the Court will streamline discovery, promote consistent and uniform resolution of important issues, and allow for efficiency and judicial economy in the resolution of identical claims in the Massachusetts action.

It is the early days of this case, with no full schedule yet entered and no trial date set. IV does not compete with the Kemper Defendants, has not moved for a preliminary injunction or

otherwise pursued its claims with any sense of urgency.  IV will not be unduly prejudiced or suffer any tactical disadvantage from a stay.

## II.   BACKGROUND

### A.   Proceedings before this Court

On February 23, 2016, IV filed this action against the Kemper Defendants, asserting infringement of claim 1 of U.S. Patent No. 6,516,442 ("the '442 patent") and claims 1 and 16 of U.S. Patent No. 7,516,177 ("the '177 patent").  Dkt. No. 1 at ¶¶ 30-48.  Although the '177 patent originally issued with twenty claims, IV disclaimed ten of these claims (claims 1-10) on November 17, 2015.  Ex. 1, Disclaimer in Patent Under 37 CFR 1.321(a).[1]  Three of the Kemper Defendants filed their Answer and Counterclaims on April 18, 2016, while Kemper Corporation filed a motion to dismiss based on a lack of personal jurisdiction.  Dkt. Nos. 16, 17.  That motion is still pending.

Pursuant to this Court's Standing Order Regarding Readiness for Scheduling Conference, IV was required to file a Notice of Readiness for a Scheduling Conference on April 25, 2016.  IV missed that deadline by over three weeks, and only on May 19, 2016 did it file such a Notice.  Dkt. No. 26.  On June 15, 2016, the Court set the Scheduling Conference for June 30, 2016.  Dkt. No. 31.  A Docket Control Order has not yet been entered in the case.

### B.   Proceedings before the Patent and Trademark Office

There are two IPRs pending on the '177 patent.  These IPRs were instituted on February 9, 2016, and cover claims 11-13 and 15-20.  Ex. 2, Decision Instituting IPR 2015-01706 at 18; Ex. 3, Decision Instituting IPR 2015-01707 at 21.  Since IV disclaimed claims 1-10 of the '177

---

[1]   All exhibits refer to exhibits attached to the Declaration of Brent P. Ray in support of this motion.

3

patent (Ex. 1), nine of the ten possible claims that IV could assert against the Kemper Defendants are currently under IPR review.

There is one IPR pending on the '442 patent. EMC Corporation ("EMC") filed this IPR on May 27, 2016 covering twelve of the claims of the '442 patent, including the sole claim of the '442 patent (claim 1) asserted by IV in this suit. Ex. 4, Petition for IPR of '442 Patent at 3; Dkt No. 1 at ¶ 30.

### C. Proceedings before the District of Massachusetts

On May 10, 2016, IV filed a lawsuit in the District of Massachusetts accusing EMC and two other defendants of infringing the '442 patent by making, using, selling, and offering to sell EMC storage arrays, among other products. Ex. 5, Complaint in *Intellectual Ventures I, LLC v. Lenovo Group Ltd.*, No. 1:16-cv-10860 at ¶ 23.

## III. ARGUMENT

### A. The Court Should Stay This Case in View of the '177 and '442 Patent IPRs

A district court has the inherent power to control its own docket, which includes the power to stay cases before it. *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005); *Clinton v. Jones*, 520 U.S. 681, 706 (1997). A stay is "particularly justified where the outcome of [a PTO proceeding] would be likely to assist the court in determining patent validity and, if the claims [are] canceled in the [PTO proceeding], would eliminate the need to try the infringement issue." *3rd Eye Surveillance, LLC v. Stealth Monitoring, Inc.*, No. 6:14-cv-162-JDL, 2015 WL 179000, at *1 (E.D. Tex. Jan. 14, 2015).

Courts typically consider three factors when deciding whether to grant a stay pending *inter partes* review of a patent-in-suit: "(1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely

result in simplifying the case before the court." *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 2:13-cv-1058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) (collecting cases). "Based on th[ese] factors, courts determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation." *Id.*

### 1.     IV Will Suffer No Undue Prejudice from a Stay

IV and the Kemper Defendants are not competitors—thus, monetary relief is sufficient to compensate IV for any injury to its patent rights. *NFC*, 2015 WL 1069111 at *3. While Kemper Corporation is a mere holding company,[2] the other three Kemper Defendants—Trinity Universal Insurance Company, Unitrin County Mutual Insurance Company, and Charter Indemnity Company—are in the business of providing insurance services, such as home and auto insurance. IV does not sell insurance; instead, it exists to monetize patents.

In addition, IV will benefit from the cost-effective resolution of validity issues that the IPRs will provide. At this early stage in litigation, the parties have taken little action and incurred minimal expenses. The case does not yet have a full schedule in place and discovery has not yet commenced. Staying this case in light of the IPRs will either head off significant future expenses entirely if the patents are found invalid, or if not, significantly reduce expenses by adding the PTO's clarifying decision and expertise to the intrinsic record of the patents. *See, e.g.*, *Intellectual Ventures I LLC v. PNC Fin. Servs. Grp., Inc.*, No. 14CV0832, 2014 WL 3942277, at *2 (W.D. Pa. Aug. 12, 2014). Furthermore, IPR proceedings have statutory one-year deadlines after institution, ensuring speedy review.

At most, IV will suffer a finite delay in the enforcement of patent rights and defer its best-case scenario of a damages award. *See* Dkt. No. 1 at ¶¶ 54-55, 57. However, "that factor is

---

[2] Nothing herein, including the use of the term "Kemper Defendants" to refer to the collective action (or inaction) of the named defendants is intended to contradict Kemper Corporation's Motion to Dismiss in any manner.

present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion." *NFC*, 2015 WL 1069111 at *2; *see also VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014).

This factor weighs in favor of a stay.

### 2. The Very Early Stage of Litigation Favors a Stay

IV filed its Complaint less than four months ago. Dkt. No. 1. Since that time, the Kemper Defendants either answered IV's Complaint or moved to dismiss. Dkt. Nos. 16, 17. IV then filed its Notice for Readiness of Scheduling Conference on May 19, 2016, nearly a month after the time it was ordered to do so by this Court. Dkt. No. 26. The Court recently set the date for the Scheduling Conference to be held on June 30, 2016. Dkt. No. 31. To date, no further action has occurred in this case. A Docket Control order has not been entered, fact discovery has yet to commence, infringement and invalidity contentions have not been served, and the parties are far from engaging in claim construction or expert discovery. Here, "the bulk of the expenses that the parties would incur in pretrial work and trial preparation are still in the future." *NFC*, 2015 WL 1069111 at *3.

The Kemper Defendants have also acted expeditiously to file this motion to stay as soon as possible. The '177 patent IPR petitions were filed and instituted prior to IV filing the Complaint in this action. Ex. 2, Decision Instituting IPR 2015-01706 at 1; Ex. 3, Decision Instituting IPR 2015-01707 at 1. EMC filed its '442 patent IPR petition last month. Ex. 4, Petition for IPR of '442 Patent at Certificate of Service, ii.

This factor weighs in favor of a stay.

### 3. The IPR proceedings will simplify the issues before the Court

"[T]he most important factor bearing on whether to grant a stay in [a] case is the prospect that the inter partes review proceeding will result in simplification of issues before the Court."

*NFC*, 2015 WL 1069111 at *4. Here, nine of the ten claims of the '177 patent that IV could assert against the Kemper Defendants are currently undergoing *inter partes* review, including the sole claim IV asserted in its Complaint. Ex. 2, Decision Instituting IPR 2015-01706 at 18; Ex. 3, Decision Instituting IPR 2015-01707 at 21; Dkt. No. 1 at ¶ 39. An IPR petition is currently pending on twelve claims of the '442 patent (including the sole claim asserted by IV in its Complaint) and the PTAB will decide whether to institute that IPR by November 27, 2016. Ex. 4, Petition for IPR of '442 Patent at 3; Dkt. No. 1 at ¶ 30.

The most recent statistics released by the PTAB show that, for IPR proceedings that are instituted and progress to a final decision, 85% result in the invalidation of one or more claims, and 71% result in invalidation of all examined claims. Ex. 6, Patent Trial and Appeal Board Statistics at 10. Based on the currently instituted IPRs, there is a high likelihood that infringement claims for the '177 patent will be reduced to just one dependent claim—claim 14. That is exactly the simplification of cases that Congress intended to encourage by establishing IPR proceedings in the America Invents Act. *NFC*, 2015 WL 1069111 at *5.

That the PTAB has not yet instituted review of the claims of the '442 patent should not control. This Court previously granted a stay before institution of post-grant review proceedings where the motion to stay "was filed so early in the litigation" before a Docket Control order had been entered and before discovery began. *Chart Trading Dev., LLC v. Tradestation Group Inc.*, No, 6:15-cv-1136, 2016 WL 1246579, at *4, *6 (E.D. Tex. Mar. 29, 2016). This case is at a similar stage as that of *Chart Trading*, with no Docket Control order yet entered and discovery not yet started.

### B. The Court Should Stay the '442 Patent Allegations in View of IV's Litigation Against EMC

Even if the Court does not believe the pending '442 IPR merits a stay as to that patent, the Court should enter a stay due to the customer suit exception.

EMC is the sole manufacturer of the products that IV alleges the Kemper Defendants "implement[] and use" to infringe the '442 patent. Dkt. No. 1, at ¶ 31. As the Federal Circuit has long recognized, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). To that end, the Federal Circuit adopted a "customer suit exception" to the general rule that favors the first-filed action. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). "Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Id.*

#### 1. <u>EMC Is the True Defendant of IV's '442 Patent Claims</u>

"The customer suit exception is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement, and to guard against possibility of abuse." *Id*. (internal quotation omitted). At the root of the preference for an action against a manufacturer, as opposed to its customers, is that a manufacturer "must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at 1464.

##### a. *IV's Infringement Allegations Against the Kemper Defendants Overlaps with its Infringement Allegations Against EMC*

EMC—not the Kemper Defendants—is the true defendant and target of IV's patent infringement allegations concerning the '442 patent. In its Complaint against the Kemper Defendants, IV alleges that: "Defendant Kemper Corporation has directly infringed and

8

continues to infringe at least claim 1 of the '442 Patent…by [] Kemper Corporation's implementation and use *of EMC VMAX and VNX Storage Arrays*." Dkt. No. 1, at ¶ 31.[3] Similarly, in its complaint against EMC, IV asserts: "EMC … make[s], use[s], offer[s] for sale and/or sell[s] in the United States products and/or services that infringe various claims of the '442 Patent, and continue to do so. … ***EMC's infringing products include without limitation VMAX storage arrays***." Ex. 5, Complaint in *Intellectual Ventures I, LLC v. Lenovo Group Ltd.*, No. 1:16-cv-10860 at ¶ 23.

                b.     *The Kemper Defendants' Use of EMC's Products Does Not Alter the Infringement Analysis*

At no point in IV's complaint against the Kemper Defendants does IV refer to any alleged configuration or alteration of any EMC product by any Kemper Defendant that would affect the infringement analysis. Dkt. No. 1, at ¶¶ 30-37. The actions of the Kemper Defendants, mere customers that use EMC's storage arrays, are irrelevant to determining whether these products infringe. *See* Declaration of John Campbell ("Campbell Decl.") ¶¶ 5-15. The Kemper Defendants' alleged infringement due to their "implementation and use" of the EMC storage arrays will not differ from the analysis of EMC's alleged infringement in Massachusetts. Proof of this fact is found in the claims of the '442 patent and the handling of the EMC products by the Kemper Defendants. *See* Campbell Decl. ¶¶ 5-15.

Regarding the '442 patent claims, each claim covers the inner workings of shared-memory, multi-processor storage arrays that utilize a "switch fabric" to transfer packets between internal components. For example, the claim asserted in IV's complaint, claim 1, claims a "shared-memory multiprocessor system" comprising the following elements: "a switch fabric," "a plurality of channels," "a plurality of switch interfaces," "a plurality of microprocessor

---

[3] All emphasis added unless otherwise noted.

9

interfaces," and "a memory interface." Ex. 7, '442 patent at 36:25-44. Each one of these elements allegedly pertains to internal components of the EMC storage arrays, not to anything that the Kemper Defendants add to EMC's products once they receive and implement them. Similarly, the claims include performing "error correction," which is performed entirely on "the data packets exchanged over the channels" located within the EMC storage arrays. Ex. 7, '442 patent at 36:25-44. Performance of the claimed method cannot be altered by the Kemper Defendants' "implementation and use." Instead, the claimed method steps of "exchanging packets" and "exchanging data" occur entirely within the EMC storage arrays. Ex. 7, '442 patent at 38:23-38.

Regarding the handling of EMC products by the Kemper Defendants, upon receiving the EMC storage arrays, the three operating Kemper Defendants install the products in data centers or data closets, and connect them to storage devices that are part of the Kemper Defendants' storage area network (SAN). Campbell Decl. ¶ 5. The Kemper Defendants do not in any way configure or alter the internal components or internal functionality of the EMC products when utilizing them in the Kemper Defendants' SAN. Campbell Decl. ¶¶ 6-7. The Kemper Defendants do not open the storage array products to investigate or learn what is inside of them, and they do not know how the storage array products internally operate—*i.e.* what is accused of infringing the '442 patent. Campbell Decl. ¶¶ 8-10. EMC has control of its proprietary technical information and the Kemper Defendants have no documents concerning how the accused products may internally "exchange packets," "exchange data," or "perform error correction." Campbell Decl. ¶¶ 11-15. It is EMC—not the Kemper Defendants—who is aware of these inner workings.

          c.    *The Customer Suit Exception Is Proper*

Application of the customer suit exception is not a rigid exercise. Although the exception is proper where a patent owner first files suit against a "mere reseller," the exception is equally applicable in other scenarios when the second-sued manufacturer is the "true defendant." *See In re Nintendo of America, Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) (customer suit exception was properly applied where patent owner simultaneously brought suit against resellers and manufacturer because manufacturer was the "true defendant"); *In re Google Inc.*, 588 Fed. App'x 988, 990 (Fed. Cir. 2014) (customer suit exception was properly applied even though the manufacturer's sued customers were not "mere resellers"). In fact, the Federal Circuit has instructed that the application of the customer suit exception is "not through such a [] 'precise rule'" but should instead be evaluated "through a flexible approach" with the goal of avoiding wasted resources when the other suit "is so closely related that substantial savings of litigation resources can be expected." *See id.* at 991. EMC is the true defendant here as the Kemper Defendants' use of the EMC storage arrays is "off the shelf" and the alleged infringement concerns the internal components and functionality of the storage arrays—not anything that the Kemper Defendants combine with them. Campbell Decl. ¶¶ 5-15; *cf. Erfindergemeinschaft Uropep GbR v. Eli Lilly and Co.*, No. 2:15-cv-1202-WCB, 2016 WL 1659924 at *3 (E.D. Tex. Apr. 26, 2016) (alleged infringement that is "off the shelf" supports application of customer suit exception); *NFC Tech., LLC v. HTC Am.*, No. 2:13-cv-1058-JRG, 2014 WL 3867963, at *2 (E.D. Tex. Aug. 5, 2014) (customer suit exception applicable where infringement allegation is based only on the manufacturer's product and not its combination with a product of the accused customer); *Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*, No. 6:06-cv-549, 2007 WL 4376104, at *3 (E.D. Tex. Dec. 13, 2007) (alleged infringement based on

manufacturer's product—as opposed to larger end use product that incorporates manufacturer's product—supports application of customer-suit exception).

      2.      <u>Efficiency and Judicial Economy Heavily Favor Staying IV's '442 Patent Claims in This Case</u>

According to the Federal Circuit, "efficiency and judicial economy" are the guiding principles in customer suit exception cases. *Spread Spectrum*, 657 F.3d at 1357. Directing IV's '442 patent claims into one direct proceeding against EMC promotes these principles by disposing of unnecessary and duplicative litigation, simplifying proceedings, and ensuring consistent rulings.

      *a.*      *The EMC Action Will Resolve IV's '442 Patent Claims Against the Kemper Defendants*

In deciding whether to stay a customer suit in favor of a later-filed manufacturer suit, "a primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz*, 909 F.2d at 1463. As the Federal Circuit has clarified, "the manufacturer's case need only have the potential to resolve the '***major issues***' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Spread Spectrum*, 657 F.3d at 1358 (quoting *Katz*, 909 F.2d at 1464).

IV's '442 patent allegations are limited to the Kemper Defendants' alleged "implementation and use" of the EMC storage arrays. Dkt. No. 1 at ¶ 31. These allegations will not differ from IV's infringement allegations brought against EMC. *See* Campbell Decl. ¶¶ 5-15. EMC is the sole and exclusive manufacturer of the accused products. The EMC action will determine whether EMC's products infringe the '442 patent, and, as a result, that case will dispose of the question of whether the Kemper Defendants' "implementation and use" of the EMC products infringes here.

12

### b. *A Stay Will Streamline Discovery*

Much, if not all, of the relevant discovery relating to the '442 patent will be in the sole possession, custody or control of EMC. The Kemper Defendants have no documents or information regarding how EMC's proprietary technology is created, designed or manufactured. Campbell Decl. ¶ 15. Allowing the '442 claim concerning the EMC storage arrays to proceed only in the EMC action will permit IV to take discovery directly from source.

EMC is headquartered in Massachusetts, the forum of its lawsuit. Ex. 5, Complaint in *Intellectual Ventures I, LLC v. Lenovo Group Ltd.*, No. 1:16-cv-10860 at ¶ 5. Witnesses for depositions and trial likely already reside in that district or would find travel to and from that forum significantly more convenient than travel to the Eastern District of Texas. Further, the Kemper Defendants' employees possess little, if any, useful information concerning the accused EMC products that IV may require to form a detailed infringement analysis (Campbell Decl. ¶¶ 13-15)—for that information, IV will need to depose EMC's engineers.

### c. *A Stay Will Promote Consistent and Uniform Resolution of Important Issues*

In determining whether judicial economy would be promoted by a stay through the customer suit exception, this Court should consider whether the competing courts may arrive at inconsistent results. *In re Google*, 588 Fed. App'x at 990. If IV's '442 patent allegations against the Kemper Defendants here and against EMC in Massachusetts are allowed to proceed separately and simultaneously, it will create wasteful duplicative litigation at risk of producing inconsistent verdicts. As the Federal Circuit has indicated, "[s]uch circumstances present a classic case for a stay: The only potential results of adjudicating these cases in parallel fashion would be the Texas and [Massachusetts] courts agree on the major issues of the litigation, thus

13

producing wasteful and unnecessary litigation, or the courts disagree, thus producing conflicting decisions." *Id.*

### d. IV Will Not Be Prejudiced By a Stay

The Kemper Defendants bring this motion very early in this case: discovery has not yet begun and a full schedule has not yet been entered. The parties are far from engaging in claim construction or expert discovery issues, let alone trial. IV is not seeking injunctive relief. As a party to the EMC action, IV will have a full opportunity to protect its interests in that litigation. In fact, staying IV's '442 infringement claims simplifies the litigation for IV, as IV will be able to marshal its resources concerning its allegations on the EMC storage arrays into one lawsuit as opposed to two. *See e.g. Card Activation Techs. v. Pier 1 Imports, Inc.*, No. 09-c-2021, 2009 WL 2956926, at *4 (N.D. Ill. Sept 14, 2009) (noting that "staying this case will allow [the patentee] the opportunity to devote to the [second-filed] case resources that otherwise would have gone into simultaneously litigating the instant case.").

## IV. CONCLUSION

This Court should stay this case pending the *inter partes* review proceedings and petitions concerning the '177 and '442 patents, and should also stay the case with respect to the '442 patent under the customer suit exception while IV's case against EMC is pending in the District of Massachusetts.

Dated: June 22, 2016

                    **KIRKLAND & ELLIS LLP**

                /s/ Brent P. Ray_____

Kenneth R. Adamo
Texas Bar No. 00846960
kenneth.adamo@kirkland.com
Brent P. Ray
Illinois Bar No. 6291911
brent.ray@kirkland.com
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on June 22, 2016.

    /s/ Brent P. Ray

## CERTIFICATE OF CONFERENCE

I hereby certify that the parties met and conferred with respect to this motion as required by Local Rule CV-7(h) via telephone on May 19, 2016. The Kemper Defendants were represented by Brent Ray, and IV was represented by Derek Gilliland. Counsel for the Kemper Defendants explained the relief sought herein, but the parties were unable to reach resolution. Accordingly, the parties are at an impasse and the instant motion is opposed by IV.

          /s/ Brent P. Ray